UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA MCELWEE, *et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 2:21-cv-1265<br>Judge Sarah D. Morrison<br>Magistrate Judge Kimberly A. Jolson |
| BRYAN COWDERY, INC., *et al.*, | : | |
| Defendants. | : | |

## OPINION AND ORDER

Named Plaintiffs Amanda McElwee and Kendall Harris brought this suit as a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.*, as amended ("FLSA"). This matter is before the Court upon Plaintiffs' Motion for Conditional Class Certification and Court-Authorized Notice. (ECF No. 19). Defendants Bryan Cowdery, Inc. and Bryan Cowdery opposed the Motion (ECF No. 21), and Plaintiffs filed their reply. (ECF No. 25). The Court **GRANTS** Plaintiffs' Motion.

### I. BACKGROUND

The following facts are drawn from Plaintiffs' Complaint (ECF No. 1) and Plaintiffs' Motion and attached declarations. (ECF No. 19).

Defendant Bryan Cowdery, Inc. ("BCI") is a parcel delivery company that contracts with FedEx or FedEx affiliates to deliver packages to customers residing primarily in Ohio. (ECF No. 1, ¶ 14). BCI is owned and operated by its namesake, Defendant Bryan Cowdery. (*Id.*, ¶ 16). BCI employs over 160 delivery drivers and

1

operates out of three separate Ohio facilities in Whitehall, Cambridge, and Chillicothe. (*Id.*, ¶¶ 15, 18). Bryan Cowdery controls a significant portion of BCI operations and determines company pay policies and practices. (*Id.*, ¶ 17; ECF No. 19, PageID 91).

BCI delivery drivers of vehicles weighing under 10,000 pounds are not exempt from FLSA overtime mandates. These drivers are paid a "day rate," and when they work over forty hours in a week, overtime is compensated at a one-and-one-half rate. (ECF No. 1, ¶¶ 19–21). Regardless of facility location, all BCI delivery drivers log their hours on a timekeeping software called "Home Base." (ECF No. 19–1, ¶¶ 17–18; ECF No. 19–2, ¶ 19). Defendants have the ability to edit employees' time entries on Home Base. (ECF No. 19–1, ¶ 12; ECF No. 19–2, ¶ 13). Plaintiffs allege Defendants intentionally edited Home Base time entries and deducted employees' otherwise compensable overtime hours. (ECF No. 1, ¶¶ 24–28). The deductions resulted in BCI's failure to pay delivery drivers for all overtime hours worked in accordance with the FLSA. (*Id.*, ¶ 24). Both named Plaintiffs provide personal examples of overtime deductions, with the earliest incident occurring in June 2020. (ECF No. 19–1, ¶¶ 14–15; ECF No. 19–2, ¶¶ 14–15; ECF No. 19–3, ¶¶ 11–15).

Plaintiffs filed their Complaint, setting forth four causes of action (ECF No. 1), before moving for conditional certification and court-authorized notice. (ECF No. 19). Prior to Plaintiffs' moving for conditional certification, BCI employee Scott

2

Edwards filed a Consent Form to also become a Named Plaintiff in this action. (ECF No. 18).

## II. STANDARD OF REVIEW

The FLSA requires employers to pay their employees "a wage consistent with the minimum wage . . . and instructs employers to pay employees overtime compensation, which must be no less than one-and-one-half times the regular rate of pay, if the employee works more than forty hours in a week." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (internal citations and quotations omitted). "'Congress passed the FLSA with broad remedial intent' to address 'unfair method[s] of competition in commerce' that cause 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396 (6th Cir. 2017) (quoting *Keller*, 781 F.3d at 806). To further that goal, § 216(b) provides:

> Any employer who violates the provisions of [29 U.S.C. §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.

"The lead plaintiff bears the burden of showing that the proposed class members are similarly situated to the lead plaintiff." *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 U.S. Dist. LEXIS 88370, at *4 (S.D. Ohio May 25, 2018) (Sargus, J.).

The Court uses a two-step analysis to determine whether plaintiffs sustain their burden to establish that they are similarly situated to the putative collective action members. *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (Marbley, J.). The first step, conditional certification, is conducted at the beginning of the discovery process. In keeping with the FLSA's remedial purpose, "the standard at the first step is 'fairly lenient . . . and typically results in conditional certification of a representative class.'" *Id.* (quoting *Comer v. Walmart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). As a result, "the plaintiffs need only make a 'modest factual showing' that they are similarly situated to proposed class members." *Id.* (quoting *Comer*, 454 F.3d at 547).

Neither the FLSA nor the Sixth Circuit define "similarly situated." *Id.* (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)). But this Court has held that plaintiffs are similarly situated "'when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Id.* (quoting *O'Brien*, 575 F.3d at 585). *See also Slaughter v. RMLS Hop Ohio, L.L.C.*, No. 2:19-cv-3812, 2020 U.S. Dist. LEXIS 69772, at *6 (S.D. Ohio Apr. 21, 2020) (Sargus, J.). Courts generally consider "'whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted.'" *Smyers v. Ohio Mulch Supply, Inc.*, No. 2:17-cv-1110, 2019 U.S. Dist. LEXIS 1815, at *5 (S.D. Ohio Jan. 4, 2019) (Marbley, J.)

(quoting *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio Sept. 4, 2014)). However, the named plaintiff need not show a "unified policy" of violations, *O'Brien*, 575 F.3d at 584, or that his position is identical to those of other putative class members, *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867-68 (S.D. Ohio 2011) (Marbley, J.) (citing *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). Further, courts "do[] not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility" when considering conditional certification. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). If conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell v. World Wide Business Servs. Corp.*, No. 2:14-cv-27, 2015 U.S. Dist. LEXIS 148191, at *4 (S.D. Ohio Nov. 2, 2015) (Deavers, M.J.).

The second step, final certification, is conducted after discovery concludes. At that point, the Court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. The court "has much more information at this point upon which to base its decision of whether the proposed plaintiffs are similarly situated. . . ." *Smyers,* 2019 U.S. Dist. LEXIS 1815, at *3-5. Consequently, a much "stricter standard" is employed for final certification. *Comer*, 454 F.3d at 547.

5

### III. ANALYSIS

#### A. Similarly Situated

Plaintiffs seek conditional certification of the following class as "similarly situated" under 29 U.S.C. § 216(b):

> All current and former Delivery Drivers who, at any time during the previous three (3) years [from March 24, 2018], drove a vehicle weighing less than 10,000 pounds during any workweek.

(ECF No. 19, PageID 90).

Plaintiffs claim a single, FLSA-violating policy – that Defendants willfully deducted otherwise compensable overtime hours from those worked by BCI delivery drivers of trucks weighing under 10,000 pounds. (ECF No. 1, ¶¶ 21, 24–25). Defendants did so, Plaintiffs allege, intentionally through altering delivery drivers' time entries in Home Base. (*Id.*, ¶¶ 22, 27). This allowed Defendants to limit their exposure to paying the one-and-one-half overtime rate. (*Id.*, ¶ 27). All delivery drivers of vehicles weighing under 10,000 pounds were subject to the same pay policies and procedures, including logging hours in Home Base. (*Id.*, ¶¶ 19–27). The Plaintiffs' declarations sufficiently support these allegations. Each declarant asserts the he or she was an employee delivery driver of a vehicle weighing under 10,000 pounds and was paid on a "day rate" basis with a one-and-one-half overtime rate. (ECF No. 19–1, McElwee Decl., ¶¶ 5–7; ECF No. 19–2, Harris Decl., ¶ 6; ECF No. 19–3, Edwards Decl., ¶¶ 4–6). Plaintiff-Declarants uniformly maintain that all BCI delivery drivers were covered by the same pay policies and practices and logged their hours in Home Base. (McElwee Decl., ¶¶ 8, 18; Harris Decl., ¶ 12; Edwards

6

Decl., ¶ 10). They assert Defendants have the ability to edit time entries in Home Base and did so by deducting from delivery drivers' logged overtime hours. (McElwee Decl., ¶¶ 10–13; Harris Decl., ¶¶ 13–15; Edwards Decl., ¶¶ 10–12). This practice is evidenced by screenshots showing that Plaintiffs' hours worked did not mirror hours paid. (McElwee Decl., ¶¶ 14–15; Edwards Decl., ¶¶ 11–15). When employees including Plaintiffs raised concerns about this issue in the "Entire Team" group message chat, Defendant Bryan Cowdery deleted the messages and threatened termination. (Harris Decl., ¶ 11; PageID 135–36). In the same group message chat, Defendant Bryan Cowdery made comments about the number of hours worked by employees. (Harris Decl., PageID 131). Considering this evidence, Plaintiffs meet their modest burden of showing they suffered a widespread FLSA-violating policy. The Court finds they are similarly situated to the putative class.

Defendants present multiple arguments to the contrary. Some of these arguments are unrelated to the alleged FLSA-violating conduct and will not be addressed. In sum, Defendants argue Plaintiffs' declarations were made without personal knowledge of (1) BCI operations prior to November 2020; (2) BCI operations and practices at the Cambridge facility; and (3) how many hours other delivery drivers worked. (ECF No. 21, PageID 170–73). Defendants also contend that Plaintiffs have no evidence Defendants deducted compensable overtime from other delivery drivers, or otherwise acted unlawfully. They instead aver that Plaintiffs are unaware of what Defendants "do with other drivers" and cannot show "how or why [their own] hours did not match." (*Id.*, PageID 172–73). Lastly,

Defendants argue Plaintiffs are not similarly situated because they took their vehicles home, while other delivery drivers did not. (*Id.*, PageID 175). The Court will address these arguments in reverse order.

The latter argument is a factual contention. Plaintiff Scott Edwards asserts in his second declaration, "I often returned my delivery vehicle to the company's location at the end of my shift." (ECF No. 25–1, ¶ 1). Defendant Bryan Cowdery in his own declaration, however, asserts that Plaintiffs (including Scott Edwards) "took their company vehicles home." (ECF No. 21–1, ¶ 6). These dueling declarations create a question of fact that the Court will not resolve at this stage. *See Waggoner*, 110 F. Supp. 3d at 765.

Second, Defendants argue Plaintiffs have no evidence that Defendants deducted compensable overtime from other delivery drivers and cannot show "how or why" their own hours did not match. (ECF No. 21, PageID 172–73). However, Plaintiffs need not prove at this stage the unique circumstances of every delivery driver, nor establish how or why their own hours were deducted. Their declarations evidencing that multiple deductions occurred are sufficient. To require more evidence at this stage "would intrude improperly into the merits of the action, essentially imposing a burden upon Plaintiff[s] to prove the factual predicates of [their] claim as a precondition to obtaining preliminary conditional certification." *Lacy v. Reddy Elec. Co.*, No. 3:11–CV–52, 2011 WL 6149842, at *3 (S.D. Ohio Dec. 9, 2011) (Rice, J.). Accordingly, this argument fails.

8

Third, Defendants contend that some of Plaintiffs' declaration statements lacked sufficient personal knowledge.

### (1) Personal Knowledge of Prior Operations

Defendants argue Plaintiffs had no knowledge of BCI operations or pay practices prior to November 2020 because they were not employed at that time. (ECF No. 21, PageID 170). This, however, does not prevent the Plaintiffs from acquiring personal knowledge of FLSA violations during their employment, and Plaintiffs declare that they did so here. It is upon this personal knowledge that they complain of overtime deductions ranging from June 2020 to June 2021. (McElwee Decl., ¶ 14; Edward Decl., ¶ 15). Accordingly, this argument fails.

### (2) Personal Knowledge of Other Locations

Defendants argue that Plaintiffs worked only at the Whitehall and Chillicothe facilities, and therefore cannot have personal knowledge of operations at the Cambridge facility. Defendants imply that, as a result, employees based out of the Cambridge facility cannot be putative class members. (ECF No. 21, PageID 170). This argument is misguided. If sufficient evidence exists to show that the putative plaintiffs were subject to the same company-wide policy, Plaintiffs need not submit declarations from every location. *Farmer v. LHC Grp., Inc.*, No. 2:20–cv–3838, 2020 U.S. Dist. LEXIS 239097, at *10 (S.D. Ohio Dec. 18, 2020) (Graham, J.) (collecting cases).

Here, Plaintiffs' declarations evidence that Defendants deducted overtime hours from delivery drivers who operated out of two of the three BCI facilities. All

BCI delivery drivers of vehicles weighing under 10,000 pounds are subject to the same pay policies and use the same timekeeping software. It follows, then, that all employees – regardless of location – were at risk of suffering the alleged FLSA-violating conduct. For this reason, the proposed putative class will not be narrowed to exclude employees working out of the Cambridge facility.

### (3) Hours Worked by Other Employees

Finally, Defendants argue Plaintiffs have no personal knowledge of hours worked by other delivery drivers because employees do not work out of a central location. (ECF No. 21, PageID 170). Many courts have held that employee statements regarding hours worked by other employees are admissible evidence based on the employee's personal knowledge. In *Noble v. Serco, Inc.*, the Court found that "where affiants stated they 'got to know several other' employees working in the same capacity, it was reasonable to infer that the affiants would have talked to their coworkers about their pay and hours worked and thus had personal knowledge on the subject." *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d at 894 (citing *Noble v. Serco, Inc.*, No. 3:08–76–DCR, 2009 WL 3154252, at *3 (E.D. Ky. Sept. 28, 2009)).

Here, Plaintiffs were in a group message with their "Entire Team," in which Defendant Bryan Cowdery explicitly messaged the delivery drivers about one employee averaging "45 [] hours a week." (ECF No. 19–2, PageID 131). It is reasonable to infer based on the existence of this group message and Defendant Bryan Cowdery's own willingness to openly discuss his employees' hours that

Plaintiffs have personal knowledge of hours worked by other employees. Further supporting this inference, Plaintiff Scott Edwards asserts he would see other delivery drivers "at the facility when they loaded their vehicles with parcels every day." (ECF No. 19–3, Edwards Decl., ¶ 3). At a minimum, employees could observe when other drivers started the workday. More likely, employees conversed about their days. Accordingly, Plaintiffs have sufficient personal knowledge to make statements regarding hours worked by other employees.

To summarize, the relevant declaration statements are founded on personal knowledge and the Plaintiffs made a modest factual showing that a widespread, FLSA-violating practice occurred. Plaintiffs have satisfied their burden at this stage. Thus, Plaintiffs are similarly situated to the other putative class members and the following class is hereby conditionally certified as a FLSA collective under § 216(b):

> All current and former Delivery Drivers who, at any time during the previous three (3) years [from March 24, 2018], drove a vehicle weighing less than 10,000 pounds during any workweek.

### B. Lookback Period

Plaintiffs request a three-year lookback period in recognition of their allegation that Defendants willfully deducted delivery drivers' compensable overtime. (ECF No. 19, PageID 101). Defendants counter that a two-year period is proper because Plaintiffs offer no evidence supporting willful action. (ECF No. 21, PageID 176). Defendants' argument fails. "Whether Defendants' alleged FLSA violations are 'willful' is a question better suited for a later stage of the litigation."

*Smith v. Generations Healthcare Servs. LLC,* No. 2:16-cv-807, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (Marbley, J.) (citing *Stanley v. Turner Oil & Gas Props.*, No. 2:16–cv–386, 2017 WL 127481, at *9 (S.D. Ohio Jan. 13, 2017) (Graham, J.) (using three-year limitations period for willful violations at notice stage)). The Court may grant a request to certify a three-year putative collective class based only on the plaintiff's allegation that an employer willfully violated the FLSA. *Lemmon v. Harry & David Operations, Inc.*, No. 2:15–cv–779, 2016 U.S. Dist. LEXIS 11810, at *16 (S.D. Ohio Jan. 20, 2016) (Smith, J.). Here, the Plaintiffs allege a willful FLSA violation. (ECF No. 1, ¶ 60). Accordingly, the Court will utilize a three-year lookback period at this stage.

## IV. NOTICE

### A. Form of the Notice

Conditional certification under the FLSA "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Rather, it "simply allows the sending of court-approved written notice to employees who must then affirmatively opt into the litigation." *Taylor v. Pilot Corp.*, 697 F.App'x 854, 860 (6th Cir. 2017) (citation omitted). As such, "[o]nce a court determines that plaintiffs have met their burden for initial class certification, the court may grant court-authorized notice informing potential plaintiffs of their opportunity to opt into the lawsuit." *Kucker v. Petco Animal Supplies Stores, Inc.*, No. 14-cv-9983 (DF), 2016 U.S. Dist. LEXIS 6416, at *26-27 (S.D. N.Y. Jan. 19, 2016) (citation omitted). "[C]ourt-supervised

12

notice is the preferred method for managing the notification process for several reasons: it avoids 'multiplicity of duplicative suits;' it allows the court to set deadlines to advance the disposition of an action; it furthers the 'wisdom and necessity for early judicial intervention' in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations." *Lynch v. United Servs. Auto. Assn.*, 491 F.Supp.2d 357, 367 (S.D. N.Y. 2007) (quoting *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171-72 (1989)).

Once conditional certification has been granted, sending notice as soon as possible is important in a FLSA collective action because the statute of limitations continues to run until individuals affirmatively opt-in to the action. *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 845 (S.D. Ohio 2013) (Marbley, J.). Court-authorized notice of a collective action under the FLSA must be "timely, accurate, and informative." *Id.* at 172.

Named Plaintiffs move the Court to authorize sending their proposed Notice and Consent to Join Form. (ECF No. 19–4). Defendants object to the form of the Notice for several reasons. (ECF No. 21, PageID 176–77). Plaintiffs provide counter arguments and address some of the objections with a modified proposed Notice. (ECF No. 25–2). The Court rules on the remaining disputes as follows:

### 1. Objection to "Description of the Lawsuit"

Defendants argue that Plaintiffs describe the lawsuit in a "one-sided manner" and that the Notice should include a description of Defendants' "full position." (ECF No. 21, PageID 177). The inclusion of unnecessary details concerning a factual

13

dispute "is not appropriate and has the potential to confuse putative plaintiffs." *Farmer*, 2020 WL 7416946, at *6 (citing *Davis v. Colonial Freight Sys.*, No. 3:16–CV–674, 2018 WL 2014548, at *6 (E.D. Tenn. Apr. 30, 2018)). Notices will generally include a defendant's denial of liability, but "do not need to describe every defense the defendant has asserted." *Id*.

Here, Plaintiffs' description of the case is general in nature; it is not unnecessarily specific or confusing. Defendants propose to include language in the Notice detailing their factual disputes and defenses. (ECF No. 21, PageID 177). Plaintiffs agreed to modify the Notice to reflect Defendants' general denial of liability but nothing more. ("Defendants deny that they deducted time from Delivery Drivers or violated the FLSA.") (ECF No. 25–2, PageID 220). This modification is sufficient. It describes the parties' general positions without risk of undue confusion to putative plaintiffs. Accordingly, the Court overrules Defendants' objection and approves the "Description of the Lawsuit" section as modified by the Plaintiffs.

### 2. Omission of Defense Counsel's Contact Information

Defendants contend the Notice should include defense counsel's contact information. (ECF No. 21, PageID 177). In support, Defendants cite a single case from this district, *Snelling v. ATC Healthcare Servs., Inc.*, No. 2:11–cv–00983, 2013 WL 1386026, at *5 (S.D. Ohio Apr. 4, 2013) (Sargus, J.). There, the Court found the inclusion of defense counsel's contact information to be consistent with a neutral approach to notice-giving. The Court respectfully declines to follow a similar

approach here. Including defense counsel's contact information in this case could "serve to confuse prospective plaintiffs and perhaps delay their efforts to discuss with [Plaintiffs' counsel] the potential benefits and costs of joining this collective action." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899 (S.D. Ohio 2018) (Sargus, J.) (quoting *Gomez v. ERMC Prop. Mgmt. Co., LLC*, Case No. 3:13–cv–01081, 2014 WL 3053210, at *1 (N.D. Ohio July 7, 2014)). And without doubting the integrity of defense counsel, inclusion of such contact information "opens the door to potentially inappropriate or unethical communications." *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15–CV–2959, 2016 WL 5104891, at *5 (S.D. Ohio Sept. 20, 2016) (Smith, J.). Accordingly, defense counsel's contact information shall not be included in the Notice.

### 3. Omission of Explanation of Potential Plaintiff Liability

Defendants argue the Notice must inform putative plaintiffs that they could be responsible for Defendants' costs in the suit. (ECF No. 21, PageID 177). This argument is not well founded because, as this Court has previously found, "while it is not impossible for a prevailing defendant to win an award of attorney's fees, . . . the likelihood that potential opt-in plaintiffs will eventually find themselves liable to pay Defendant's attorney's fees is slight, and notifying potential opt-ins of that remote possibility may unfairly chill potential opt-in participation than otherwise." *Headspeth v. TPUSA*, No. 2:19–cv–2062, 2020 WL 4577491, *2 (S.D. Ohio July 23, 2020) (Morrison, J.) (quotation omitted). Accordingly, this objection is overruled.

15

### 4. Potential of Travel for Deposition

Lastly, Defendants argue the Notice should inform putative plaintiffs that they may have to travel for deposition. (ECF No. 21, PageID 177). Currently, the Notice states:

> As a party to this lawsuit, there is a possibility that you may be required to provide information about your employment with Defendants, answer written questions, produce documents and/or testify at a pre-trial deposition or at trial. Your legal team will work with you so that this process is as convenient for you as possible.

(ECF No. 25–2, PageID 222). Plaintiffs counter that including additional information about deposition travel is unnecessary and the current language adequately informs putative plaintiffs of their potential obligations. The Court agrees and finds the current language is sufficient. *See Farmer*, 2020 WL 7416946, at *7 (finding that language regarding the possibility of deposition travel is not necessary to adequately inform putative plaintiffs of their obligations). Accordingly, this objection is overruled.

### B. Opt-In Period

The Plaintiffs ask for a sixty (60) day opt-in period. (ECF No. 19, PageID 105). Defendants do not object. Accordingly, the sixty (60) day opt-in period is approved.

### C. Methods of Delivery

Plaintiffs originally requested the Notice and Consent Form be sent via U.S. mail and email, with a reminder email and text message to all putative plaintiffs halfway through the notice period. (ECF No. 19, PageID 102–03). Defendants objected to the reminder message and to any use of text messaging. (ECF No. 21,

16

PageID 176–77). Plaintiffs subsequently withdrew their requests for a reminder and to use text messaging. (ECF No. 25, PageID 214). Accordingly, the Court directs Plaintiffs to utilize both U.S. Mail and email to distribute the modified Notice and Consent to Join Form without any email or text message reminders to follow.

### D. Roster of Putative Class Members

Plaintiffs request an order requiring Defendants to identify all potential class members within fourteen (14) days of this Order. This request includes identifying each person by full name, last known address, all known email addresses, and dates of employment. (ECF No. 21, PageID 102–05). Defendants need not provide Plaintiffs with telephone numbers of potential class members because Plaintiffs have withdrawn their request for a reminder Notice to be sent by text message. Accordingly, the Court orders Defendants to produce the names, dates of employment, last known mailing addresses, and all known email addresses of the putative class members to Plaintiffs' counsel in an electronic and importable format within fourteen (14) days of this Order.

### V. CONCLUSION

Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice (ECF No. 19) is **GRANTED**. The Court hereby conditionally certifies the following class:

> All current and former Delivery Drivers who, at any time during the previous three (3) years [from March 24, 2018], drove a vehicle weighing less than 10,000 pounds during any workweek.

Defendants are **ORDERED** to provide Plaintiffs, within fourteen (14) days of this Opinion & Order, a roster of all potential opt-in plaintiffs that includes their names, dates of employment, last known mailing addresses, and all known email addresses.

The Notice and Consent to Join Form shall be sent to the potential opt-in plaintiffs within seven (7) days of receipt of the roster using their home and email addresses.

**IT IS SO ORDERED.**

>**/s/Sarah D. Morrison**
>**SARAH D. MORRISON**
>**UNITED STATES DISTRICT JUDGE**