**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AMANDA MCELWEE, et al.,**

**Plaintiffs,**

**v.**

**BRYAN COWDERY, INC., et al.,**

**Defendants.**

**Civil Action 2:21-cv-1265
Judge Sarah D. Morrison
Magistrate Judge Jolson**

**OPINION AND ORDER**

This matter is before the Court on an ongoing discovery dispute regarding requests for production and interrogatories served by Plaintiffs. (Doc. 60 at 2). Defendants object to the relevance of the information sought. (*See* Doc. 61). Because the Court finds that the disputed interrogatories and requests for production are relevant and discoverable, Defendants are **ORDERED** to respond.

## I. BACKGROUND

Plaintiffs bring this action, on behalf of themselves and a proposed class of employees, to recover overtime pay they allege Defendants have withheld in violation of the Fair Labor Standards Act (FLSA) and the Ohio Minimum Fair Wage Standards Act. (*See* Doc. 48). Two of the named Plaintiffs, Amanda McElwee and Kendall Harris, also maintain individual retaliation claims against Defendants under the FLSA. (*Id.*, ¶¶ 107–18). This discovery dispute solely relates to the retaliation claims brought by Plaintiffs McElwee and Harris.

All three named Plaintiffs worked as delivery drivers for Defendants. (*Id.*, ¶¶ 41, 43, 53). Plaintiffs allege that, at various times in 2020 and 2021, Defendants altered their hours to exclude overtime worked and the pay to which they were entitled as a result. (*Id.*, ¶¶ 40, 47, 57). Plaintiffs McElwee and Harris individually confronted Defendants about the missing time on their

paychecks. (*Id.*, ¶¶ 48, 58). McElwee claims that she threatened to contact the Department of Labor and file a complaint, after which she was assigned an unmanageably large route in an effort to have her quit. (*Id.*, ¶¶ 49–50). Harris claims that, after his complaints, Defendants reduced his hours but at times still expected him to work unpaid overtime—which he refused to do. (*Id.*, ¶¶ 59–61).

Both Plaintiffs claim that they were terminated as a result of exercising their rights under the FLSA. On the days of their respective terminations, both McElwee and Harris claim they received four write-ups simultaneously as the reasons for their terminations, and both claim that these reasons are entirely pretextual. (*Id.*, ¶¶ 51, 62, 107–18). Defendants largely deny Plaintiffs' allegations, namely that the firings were pretextual. (Doc. 49, ¶¶ 46–51, 54–62). Regarding McElwee, Defendants claim she "came and left whenever she wanted," affecting their opportunity to present her with the write-ups. (*Id.*, ¶ 51). Regarding Harris, Defendants claim he received all write-ups at prior times, not just on the day of his termination. (*Id.*, ¶ 62).

Now, Plaintiffs have served interrogatories and requests for production on Defendants. The parties dispute whether this discovery seeking information about other employees—which might serve as comparator evidence in Plaintiffs' retaliation claims—is relevant. Particularly, they dispute to what extent the other employees must be "similarly-situated" to Plaintiffs in order for the information to be relevant and, therefore, discoverable under Federal Rule of Civil Procedure 26(b)(1). The Court instructed the parties to submit simultaneous letter briefs to the Court. They have (Docs. 60, 61), and this matter is now ripe for resolution.

## II. STANDARD

While no motion to compel has been filed, the rules that govern such a motion provide guidance on resolving this discovery dispute. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case." Rule 37 permits a discovering party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a). And it allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "Relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III. DISCUSSION

Discoverable material must be relevant, nonprivileged, and proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). Defendants do not contend that the information requested by Plaintiffs is privileged or disproportionate to the needs of the case. (*See* Doc. 61). Rather, they focus on whether the requested information is relevant. Particularly, they contend that "[b]ecause

only similarly-situated employees are relevant" to Plaintiffs' retaliation claims, "discovery is limited to similarly-situated employees." (*Id.* at 2).

Plaintiffs ask Defendants to identify their current and former employees who were employed in the same role as Plaintiffs and reported to the same supervisors or decisionmakers. (Doc. 60 at 2). They also ask that Defendants identify which of those employees were terminated for violating Defendants' policies and procedures. (*Id.*). Finally, they ask for production of disciplinary records for all identified individuals. (*Id.*). In particular, Plaintiffs indicate the discovery will offer insight into whether: (1) Plaintiffs' policy violations were the actual cause of termination; (2) whether other drivers were issued written discipline for similar violations, or if the written reports issued to Plaintiffs were merely pretext for retaliatory termination; and (3) whether other drivers that complained about pay or working conditions were targets of discipline or termination. (*Id.* at 3).

Because this requested information has a tendency to make the fact of a causal connection between protected activity and adverse action more or less likely—and that is a central element of Plaintiffs' retaliation claims—the information is relevant. *See Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (providing the elements of an FLSA retaliation claim, including that "there was a causal connection between the protected activity and the adverse employment action."). Further, by limiting the scope of their requests to only those employees in the same position as Plaintiffs, who reported to the same supervisors and decisionmakers, Plaintiffs have reasonably worked to exclude information that would be clearly irrelevant to their claims.

Yet, Defendants argue that the scope of discovery should be further narrowed. They say Plaintiffs are required to demonstrate that the employees about whom this information is sought are "similarly-situated" to Plaintiffs, as that standard is applied in the Sixth Circuit to require

"nearly identical conduct without differentiating circumstances." (Doc. 61 at 2) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). This standard, however, dictates what comparator evidence is sufficient to prove the element of discrimination at trial or summary judgment. The Sixth Circuit "explained in *Mitchell* that when the plaintiff lacks direct evidence of discrimination, 'the plaintiff must show that the "comparables" are similarly-situated in all respects,' absent other circumstantial or statistical evidence supporting an inference of discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell*, 964 F.2d at 583). Indeed, the bulk of the caselaw Defendants cite involves the review, or initial determination, of summary judgment. *See generally Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992); *Leadbetter v. Gilley*, 385 F.3d 683 (6th Cir. 2004); *Alomari v. Ohio Dept. of Pub. Safety*, 626 F. App'x 558 (6th Cir. 2015); *Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006); *Millen v. Oxford Bank*, 745 F. App'x 609 (6th Cir. 2018); *White v. Reynolds*, 2:15-cv-2019, 2016 WL 5914204 (S.D. Ohio Oct. 11, 2016).

Defendants' position conflates the information-gathering purpose of discovery with the factfinding purpose of trial and summary judgment. The Sixth Circuit has cautioned against employing the "similarly-situated" standard so as to require "exact correlation" between potential comparators and plaintiffs at the discovery phase, as is proposed by Defendants here. *Bobo v. UPS, Inc.*, 665 F.3d 741, 751–52 (6th Cir. 2012), *abrogated on other grounds* ("[B]y limiting discovery on other potential comparators, the district court improperly narrowed [Rule] 26(b)(1)."). Discovery gives litigants the means "to point to the relevant comparators in [a] case." *Clay v. UPS, Inc.*, 501 F.3d 695, 712 (6th Cir. 2007). Thus, the standard for relevance in discovery is that "proposed comparators [are] similar *in all relevant respects*." *Nathan v. Ohio State*

*University*, No. 2:10-cv-872, 2012 WL 5342711, *10 (S.D. Ohio Oct. 29, 2012) (emphasis added) (internal quotation marks omitted) (quoting *Bobo*, 665 F.3d at 751).

Here, Plaintiffs have properly identified proposed comparators that are similar in all "relevant respects." They only request information about drivers employed in the same position, reporting to the same supervisors, who were subjected to similar treatment—that is, were issued written disciplinary reports or terminated for violations of Defendants' policies and procedures. These proposed comparators are "subject to the same processes for . . . evaluation" as Plaintiffs. *Id.* at *11. Thus, their treatment in relation to the treatment of Plaintiffs is relevant to establishing Plaintiffs' retaliation claims.

Though Defendants also identify cases which affirm the exercise of trial courts' discretion to limit discovery to similarly-situated employees, those cases ultimately reinforce the principle that it is within the trial court's "broad discretion in matters of discovery," to limit the scope of discovery as it finds appropriate. *McDermott v. Continental Airlines, Inc.*, 339 F. App'x 552, 560 (6th Cir. 2009) (quoting *John B. v. Goetz*, 531 F.3d 448, 458 (6th Cir. 2008)). For instance, in *McDermott v. Continental Airlines, Inc.*, the plaintiff was a customer service agent for Continental Airlines at the Port Columbus Airport, who alleged wrongful discharge in retaliation for safety complaints he made against the airline. 339 F. App'x at 554. The airline maintained that plaintiff was fired because he was untruthful during an investigation into a baggage cart accident which caused extensive damage to the airport. *Id.* The Sixth Circuit found no abuse of discretion where the trial court limited plaintiff's discovery to only those accident investigations at the Columbus airport, as opposed to all Ohio airports, because that confined discovery to the same decisionmakers. *Id.* at 559–60. Further, it found no abuse of discretion where the trial court limited discovery to other investigations in which employees were found to be untruthful because

the trial court found those employees to be most similarly-situated to the plaintiff. *Id.* at 560; *see also Hairston v. AK Steel Corp.*, 162 F. App'x 505, 510 (6th Cir. 2006) (finding no abuse of discretion where trial court limited discovery to employees supervised by the same manager and who were supervised after a new owner implemented more stringent policies and expectations); *Finch v. Xavier Univ.*, 1:07-cv-987, 2009 WL 10679171, at *2 (S.D. Ohio Mar. 25, 2009) (affirming magistrate judge's order limiting employment discovery where plaintiffs' stated need for the requested discovery was so vague and speculative as to "tacitly concede that many of their discovery requests are not likely to lead to the discovery of admissible evidence.").

Notably, none of these cases displace the principle from *Bobo* that a plaintiff need only show that her proposed comparators are similar in all "relevant respects," and not that there is an "exact correlation." 665 F.3d at 751. Here, Plaintiffs have made such a showing. As in *McDermott* and *Hairston*, Plaintiffs have limited their requests to employees working under the same supervisors. They have further limited their requests to those employees who were disciplined under Defendants' policies and procedures and/or were terminated.

Defendants suggest discovery should instead be limited to drivers who received the same number and type of written disciplinary reports as Plaintiffs, along an identical timeline. That is, they say discovery should be limited to drivers reporting to manager Josh Muncy (like Plaintiff McElwee) who had four written disciplinary reports in thirty days and drivers reporting to manager Ryker Nott (like Plaintiff Harris) who "repeatedly failed to complete their deliveries and repeatedly refused to work" within thirty days. (Doc. 61 at 3). The Court does not accept these as "relevant factor[s] upon which to further limit the group of comparators from which Plaintiff[s] can seek discovery." *Nathan*, 2012 WL 5342711, at *11.

By Defendants' logic, they should not be required to produce information about a driver reporting to Mr. Muncy who had nine written disciplinary reports in ninety days—so long as no four of those nine reports occurred in the same thirty days. That would be an undue restriction on the exchange of relevant information between the parties. Additionally, though they suggest that discovery related to Harris should be limited to employees who engaged in the same disciplined conduct (employees who "failed to complete their deliveries and . . . refused to work") they do not suggest that the discovery related to McElwee should be similarly limited. (Doc. 61 at 3). Moreover, it is not clear from their supporting material what McElwee *was* disciplined for, only that she received four write-ups in thirty days. (Doc. 61-3). And while it is clear that Harris was disciplined for violations related to "Performance" and "Attendance," Defendants have not provided any reason those violations are so unique as to render discovery on other disciplinary violations irrelevant. (Doc. 61-2). Indeed, violations for "Attendance" could seemingly be alternatively categorized as "Unauthorized Absence," and violations related to delivery quota, while categorized as "Performance" violations for Harris, could as easily be categorized under apparent catch-alls like "Conduct" or "Failure to Follow Instructions." (*See id.*). In other words, Defendants have not provided any reason to deem Plaintiffs' disciplined behavior as meaningfully distinct from other violation behavior included on the Employee Discipline Forms.

At base, Defendants ask the Court to hold Plaintiffs to a standard for proving the elements of their claim before any meaningful discovery has taken place. The Court declines to do so. While arguments as to whether a comparator is in a "nearly identical" employment situation are certainly appropriate at trial or summary judgment, discovery is not so limited. Indeed, discovery should help the parties determine the exact contours of "similarly-situated" as applied to these facts and whether any such comparators exist in the present case.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the disputed interrogatories and requests for production are relevant and discoverable. Accordingly, Defendants are **ORDERED** to respond to the interrogatories and requests for production.

IT IS SO ORDERED.

Date: April 1, 2022

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE