## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**AMANDA MCELWEE,** *et al.,*

        **Plaintiffs,**       **:**

    **v.**

**BRYAN COWDERY, INC.,** *et al.,*    **:**

        **Defendants.**

**Case No. 2:21-cv-1265**
**Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## <u>OPINION AND ORDER</u>

Amanda McElwee, Kendall Harris, and Scott Edwards are former employees of Bryan Cowdery Inc. ("BCI"), a parcel delivery company that contracts with FedEx and FedEx affiliates to deliver packages throughout Ohio. They brought this suit against BCI and Bryan Cowdery primarily as a collective action seeking recovery of unpaid overtime compensation under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 ("FLSA"). Plaintiffs' FLSA collective class was "conditionally certified" as follows:

> All current and former Delivery Drivers who, at any time during the previous three (3) years, drove a vehicle weighing less than 10,000 pounds during any workweek.

(*See* Opinion and Order, ECF No. 26.) Following court-supervised notice to potential plaintiffs, 51 delivery drivers opted into this case.

Now before the Court are several motions. Defendants filed a motion for summary judgment on all claims and moved to "decertify" Plaintiffs' FLSA

collective action. (ECF No. 79.) Plaintiffs filed a partial motion for summary judgment on Counts I and II of the Amended Complaint. (ECF No. 85). Both parties moved to strike certain arguments and evidence used in the motions for summary judgment. (Plaintiffs' Motion to Strike GPS Arguments and Evidence, ECF No. 100; Defendants' Motion to Strike Summary Judgment Sample Evidence, ECF No. 102.) The motions are fully briefed and ripe for consideration.

The Court will address the motions to strike and motions for summary judgment before turning to Defendants' motion to decertify the FLSA collective class.

## I.    INTRODUCTION

Plaintiffs assert five causes of action:

- Count I— FLSA Collective Unpaid Overtime Claims
- Count II—Named Plaintiffs' Ohio's Minimum Fair Wage Standards Act ("OMFWSA") Unpaid Overtime Claims[1]
- Count III—Named Plaintiffs' Unjust Enrichment Claims
- Count IV—Harris's FLSA Retaliation Claim
- Count V— McElwee's FLSA Retaliation claim

(Am. Compl., ECF No. 48.)

Plaintiffs' first three claims arise out of changes that Defendants made to employee time records that allegedly resulted in BCI delivery drivers not being fully

---

[1]Plaintiffs purported to bring Counts II and III as class action claims. After the summary judgment motions were fully briefed, Plaintiffs were ordered to show cause why their Rule 23 class allegations should not be struck for their failure to move for class certification. (ECF No. 105.) In response, Plaintiffs represented that they would not be seeking certification of a Rule 23 class and did not oppose striking class allegations. Accordingly, the class allegations on Counts II and III are **STRUCK**.

paid. Although Defendants initially denied altering employees' reported time, it is now undisputed that Defendants altered employees' time in BCI's timekeeping software known as HomeBase.

Delivery drivers recorded their hours using a HomeBase application on their phones. (Cowdery Dep., ECF No. 83-1, p. 74.) Cowdery, direct supervisors, and human resources officers could change the time entered by an employee and could report time on behalf of an employee in HomeBase. (*See* HomeBase Chief Operating Officer Decl., ECF No. 85-4; Cowdery Dep., ECF No. 83-1, pp. 95, 166–167.) When time was reported, edited, or deleted, HomeBase automatically recorded when and by whom the action was taken. (*See* HomeBase Chief Operating Officer Decl., ECF No. 85-4.) HomeBase records show that, at some point during their employment, Defendants changed the time recorded by all of the named plaintiffs and the 51 opt-ins.[2] (*See* ECF No. 85-9, Exhs. D-1, D-2 (filed manually)).

Plaintiffs claim that Defendants changed delivery drivers' time as part of a uniform policy to avoid compensating them for overtime. They say that Defendants carried out this policy in three ways: (1) by shaving time off of employees' recorded start and end times, (2) by deleting time that employees recorded working on days

---

[2]Named Plaintiffs dispute 147 changes made to their recorded time. (*See* McElwee Decl., ECF No. 85-14; Harris Decl., ECF No. 85-19; Edwards Decl., ECF No. 85-22.) They argue that these changes deprived them of earned overtime because, even with Defendants' changes, they were eligible for overtime compensation for at least half of the weeks that they worked at BCI. (Employee Paystubs, ECF No. 85-2, PAGEID # 2664–70 (McElwee eligible for overtime 4 out of 7 weeks); 2633–47 (eligible for overtime 7 out of 14 weeks); 2586–2605 (Edwards eligible for overtime 24 out of 32 weeks).)

they were not scheduled to work, and (3) by failing to honor employees' requests to correct their time records.[3] (ECF No. 85, PAGEID # 2471.)

Defendants tell a different story saying that they "pulled their hair out" trying to get BCI employees to accurately report their time. (ECF No. 79, PAGEID # 499.) According to Defendants, BCI had a corrective system that employees were required to use to cure inaccuracies in their time records. Defendants argue that they honored good faith requests to correct an employee's time, but when employees incorrectly reported their time and/or failed to request corrections, changes were necessary to avoid paying for work not performed. (*Id.* at 499–500.)

McElwee and Harris also claim they were fired in retaliation for their complaints that they had not been paid for all of their earned time. (McElwee Dep., ECF No. 80-1, p. 183; Harris Dep., ECF No. 81-1, pp. 84–87, 94; ECF No. 94, PAGEID # 3777.) Defendants counter that McElwee and Harris were terminated based on their disciplinary records as both of them had accumulated more than three "write-ups" during a two-week period. (ECF No. 79, PAGEID # 505.)

## II.    MOTIONS TO STRIKE EVIDENCE

The Federal Rules of Civil Procedure do not provide for a motion to strike documents other than pleadings. *See* Fed. R. Civ. P. 12(f) (limited to striking pleadings or portions of pleadings). "Instead, trial courts make use of their inherent

---

[3]Plaintiffs acknowledge that some changes by Defendants properly corrected time records when employees forgot to clock in and out. (ECF No. 85, PAGEID # 2477–78; ECF No. 94, PAGEID # 3768.)

power to control their dockets, when determining whether to strike documents or portions of documents." *Getachew v. Cent. Ohio Transit Auth.*, No. 2:11-cv-860, 2013 WL 819733, at *2 (S.D. Ohio Mar. 5, 2013) (Sargus, J.) (citing *Anthony v. BTR Auto. Sealing Sys.,* 339 F.3d 506, 516 (6th Cir. 2003)). Therefore, striking evidence or arguments presented at summary judgment lies in the trial court's sound discretion. *See Aerel S.R.L. v. PCC Airfoils, LLC,* 448 F.3d 899, 906 (6th Cir. 2006). However, motions to strike evidence or arguments are generally disfavored; "[r]ather than striking material, a court may simply ignore inadmissible evidence." *O'Banion v. Am. Aggregates Corp.*, No. 1:19-CV-841, 2020 WL 13469259, at *1 (S.D. Ohio July 23, 2020) (Bowman, M.J.) (citations omitted).

## A. Plaintiffs' Motion to Strike Defendants' GPS Arguments and Evidence

Plaintiffs move to strike Defendants' arguments and exhibits regarding GPS data that were submitted for the first time with Defendants' reply brief. (GPS Data, ECF Nos. 99-2, 99-3; Plaintiffs' Mot. to Strike, ECF No. 100, PAGEID # 4498.) Defendants respond that their evidence should not be struck because they submitted the GPS evidence to rebut an argument raised in Plaintiffs' response and, in any event, they referred to their GPS evidence in their motion for summary judgment. (ECF No. 101, PAGEID # 4504.)

"It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *In re:*

*Firstenergy Corp. Sec. Litig.*, 316 F.Supp.2d 581, 599 (6th Cir.2004). As for the

submission of new evidence in a reply brief, the Local Rules of this Court state that:

> When proof of facts not already of record is necessary to support or
> oppose a motion, all evidence then available shall be discussed in, and
> submitted no later than, the primary memorandum of the party
> relying upon such evidence. Evidence used to support a reply
> memorandum shall be limited to that needed to rebut the positions
> argued in memoranda in opposition.

S.D. Ohio Civ. R. 7.2(d).

Defendants referred to their use of GPS data in their motion for summary

judgment but did not submit GPS evidence in support of that motion. Because

Defendants' use of GPS data was not raised for the first time in their reply,

Defendants arguments regarding that issue will not be stricken. However, they

provide no reason why they waited until their reply to submit their GPS evidence,

so it will be struck.

Accordingly, Plaintiffs' motion is **GRANTED** as to Exhibits 1 and 2 but

**DENIED** as to Defendants' arguments in their reply regarding GPS data.

### B. Defendants' Motion to Strike Plaintiffs' Summary Judgment Sample Evidence

When they received Defendants' requests for discovery from all 51 opt-ins,

Plaintiffs objected that the requests were overbroad and proposed that discovery

should be limited to a "representative sample" of opt-ins. (Attorney Correspondence,

ECF No. 98-1.) The parties then agreed to limit discovery to the three named

plaintiffs and to a randomly selected sample of 13 opt-in plaintiffs (the "Discovery

Sample"). (Attorney Correspondence, ECF Nos. 92-8, 92-11, 98-1.) However, when it

came time for summary judgment briefing, Plaintiffs submitted evidence for the three named plaintiffs, two opt-ins from the Discovery Sample, and twelve opt-ins for which discovery was not conducted (the "Summary Judgment Sample").

Defendants move to strike Plaintiffs' Summary Judgment Sample evidence, arguing that such evidence is inadmissible because Plaintiffs have not shown that the Summary Judgment Sample was reliably selected through a randomized process. (ECF No. 102, PAGEID # 4508.) In the alternative, Defendants argue that Plaintiffs should be barred from using evidence from the twelve opt-in plaintiffs that were not subject to discovery. (*Id.*)

Plaintiffs do not explain how they selected their Summary Judgment Sample, instead arguing that the parties' agreement to limit discovery does not limit the evidence they can use at summary judgment. (ECF No. 103, PAGEID # 4513.)

Plaintiffs' failure to explain how they selected the Summary Judgment Sample certainly suggests cherry-picking and undermines the reliability of their Sample evidence.[4] Nevertheless, Plaintiffs submit the Summary Judgment Sample in support of damages for the FLSA collective overtime claims and, because genuine issues of material fact remain on the issue of liability, the Court will not address alleged damages at this time. Accordingly, striking Plaintiffs' Summary Judgment

---

[4]In fact, this evidence is really a sample of the Sample. Plaintiffs show only the amount of alleged unpaid overtime that the Summary Judgment Sample worked during "Example Workweeks." (ECF No. 85, PAGEID # 2483–84.) Thus, the suggestion of cherry-picking is compounded by Plaintiffs' lack of explanation for how they selected which Example Workweeks to highlight for the Sample.

Sample evidence from the record is unnecessary and Defendants' motion to strike such evidence is **DENIED** as moot.

## III.   MOTIONS FOR SUMMARY JUDGMENT

### A.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

"When parties file cross-motions for summary judgment, the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001). A genuine issue exists if the nonmoving party can present "significant probative evidence" to

show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597–98 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

> **B.   Discussion**
>
> **1.   Unpaid Overtime Claims—Counts I and II**

The FLSA requires employers to pay their employees overtime wages at a rate of not less than one-and-a-half times the regular rate of pay for every hour that employees work over 40 hours per week. *See* 29 U.S.C. § 207(a)(1). Ohio's Minimum Fair Wage Standards Act ("OMFWSA") has the same requirements and incorporates the procedures and standards contained in the FLSA. Ohio Rev. Code § 4111.03(A); *see also Stang v. Paycor, Inc.*, 582 F. Supp. 3d 563, 566 (S.D. Ohio 2022) (Barratt, J.) (citing *Briscoe v. Columbus Metropolitan Area Comm. Action Org.*, No. 81AP-887, 1982 Ohio App. LEXIS 13116 (10th Dist.), 1982 WL 4028, at *3 (Ohio App. Mar. 9, 1982) ("By virtue of [OMFWSA], Ohio defers to federal regulations and case law for the determination of eligibility for overtime compensation.")). "Courts approach issues regarding unpaid overtime raised under the FLSA and OMFWSA in a unitary fashion." *Id.*

Whether proceeding individually or collectively, an employee asserting an unpaid overtime claim against his employer "has the burden of proving that he performed work for which he was not properly compensated." *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020) (individual claim); *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 747 (6th Cir. 2019) (collective action). For damages, employees must prove the "amount and extent of [unpaid] work performed" in excess of 40 hours. *Mt. Clemens,* 328 U.S. at 687, 66 S.Ct. 1187. To meet his burden, an employee must prove liability and damages by a preponderance of the evidence. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398–99 (6th Cir. 2017). The FLSA is not a strict liability statute, so an employee must also prove that his employer had the requisite knowledge of his unpaid work. *See Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016).

The parties dispute whether Plaintiffs have met their burden in proving liability and damages. Because genuine issues of material fact remain as to liability, the Court need not address the parties' arguments on damages.

      **a.**    **Genuine issues of material fact exist as to whether Defendants removed time that BCI employees actually worked.**

Employees are entitled to compensation for all work performed, even if the work was performed outside of scheduled working periods or was officially prohibited. *Craig*, 823 F.3d at 388 (citations omitted). However, the Portal-to-Portal Act of 1947 limited employer liability under the FLSA by making non-compensable certain work-related activities that an employee engages in before starting and

10

after completing their principal activities (*i.e.*, "preliminary" or "postliminary" activities). 29 U.S.C. § 254(a); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 32–33 (2014). Principal activities are those that an employee is "employed to perform." 29 U.S.C. § 254(a)(1).

> The term principal activity embraces all activities which are an integral and indispensable part of the principal activities. An activity is integral and indispensable to the principal activities an individual is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities. In other words, an activity is integral and indispensable to the work an employee was hired to do if it is a component of that work, and he cannot complete the work without it.

*In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig..*, 852 F.3d 601, 609 (6th Cir. 2017) (citations and quotations omitted) (cleaned up). Thus, if an employee's start or end of day activity is not integral and indispensable to an employee's duties and if it can be eliminated without impairing the employee's ability to do his job, then it is not compensable.

Here, Defendants changed employees' reported start and end times. To establish FLSA liability for these changes, Plaintiffs must demonstrate, among other things, that Defendants' changes resulted in delivery drivers not being paid for time spent performing compensable activities. There are five categories of activities in which Plaintiffs claim they were engaged and for which they should have been paid.

The primary duties of BCI delivery drivers were to pick-up and deliver FedEx packages along assigned routes. (Cowdery Dep., ECF No. 83-1, pp. 10–11.) Drivers

11

began their shifts by reporting to a FedEx warehouse where they would prepare for the day's route. (Edwards Dep., ECF No. 82-1, pp. 31–32; Harris Dep., ECF No. 81-1, pp. 27–28, 57–58; Cowdery Dep. ECF No. 83-1, 31–35.) After completing their final delivery, BCI drivers were required to complete close out reports, inspect their vehicles, and return leftover packages to FedEx before heading home. (Cowdery Dep., ECF No. 83-1, pp. 50–52.) Some drivers commuted home in a BCI delivery vehicle. (Cowdery Dep. ECF No. 83-1, p. 159–60.)

(1) *Start of Day Activities.* Start of day activities included helping sort packages and load other employees' vehicles, preparing their own vehicles to receive packages, and receiving packages for their assigned route. (Edwards Dep., ECF No. 82-1, pp. 31–32; Harris Dep., ECF No. 81-1, pp. 27–28, 57–58.) None of these activities could be eliminated without impairing an employee's ability to complete their primary function of delivering packages. As such, plaintiffs were entitled to be compensated for performing these activities.

(2) *Close-out Reports.* Close-out reports completed by drivers involved scanning and coding leftover packages and informing their managers and the Department of Transportation (DoT) that they completed their route. (Cowdery Dep., ECF No. 83-1, p. 52; Edwards Dep., ECF No. 82-1, p. 30.) Accurately tracking packages and complying with DoT requirements is essential to BCI's operation, so completing closeout reports is a principal activity for which plaintiffs are entitled to compensation.

**(3)** *Post-trip Inspections*. Post-trip inspections were necessary to maintain BCI's delivery fleet and to ensure the safety of employees while on the road. As such, inspections were integral to a driver's ability to perform their essential duties without interruption.[5] Therefore, plaintiffs are entitled to compensation for their time spent on post-trip inspections.

---

[5]Defendants argue that the post-trip inspections are not compensable because they were incidental to an employee's use of BCI vehicles for commuting. (ECF No. 99, PAGEID # 3835.) The FLSA states that:

> [T]he use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254 (emphasis added). The Sixth Circuit has explained that:

> Keeping vehicles clean and scheduling maintenance. . . are hardly arduous and precisely the sort of activities that Congress had in mind when it used the phrase "incidental to the use of [the employer's] vehicle." [29 U.S.C. § 254(a)]. The legislative history of the 1996 amendments is instructive: "It is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting. . .  [R]outine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable. H.R. Rep. 104–585.

*Aiken v. City of Memphis, Tennessee*, 190 F.3d 753, 759 (6th Cir. 1999) (first alteration in original). At BCI, post-trip inspections were required whether or not a delivery vehicle was used to commute (Cowdery Dep., ECF No. 83-1, pp. 49–50), so inspections are not excluded from principal activities as incidental to commuting.

13

**(4)** ***Returning Packages.*** Drivers were required to return leftover packages to FedEx at the end of their shifts, either directly or by transferring the packages other drivers. (Cowdery Dep., ECF No. 83-1, pp. 50–52, 149; Edwards Dep. 82-1, pp. 34–35; McElwee Dep. 80-1, p. 119.) FLSA regulations specify that employees are entitled to compensation for travel time when they are required to return to an employer's premises or a designated location after completing their work. *See* 29 C.F.R. § 785.38. Thus, time that plaintiffs spent returning leftover packages was compensable.

**(5)** ***Commuting.*** Employees are not entitled to compensation for time spent commuting, regardless of whether they drove a company vehicle home. *See* 29 U.S.C. § 254. *Aiken*, 190 F.3d at 759 (commuting in a company vehicle does not change the personal nature of an employee's commute). Thus, time that plaintiffs spent commuting was not compensable.

In sum, Plaintiffs were entitled to compensation for the specified start of day activities, for completion of their closeout reports and post-trip inspections, and for returning leftover packages to FedEx, but not for commuting. Yet, Plaintiffs have not demonstrated their right to summary judgment based on these activities. Plaintiffs have not shown that on any particular day they performed compensable work without being paid overtime. Instead, they use broad strokes to try to prove that Defendants' changes resulted in unpaid overtime because drivers generally performed compensable duties at the start and end of their shifts, they generally reported their time correctly, and were generally eligible for overtime. None of these

14

generalizations proves that Defendants violated the FLSA as to any particular employee during any particular pay period.

Defendants fare no better. Where Plaintiffs rely on generalizations, Defendants deal in unfounded absolutes. Having abandoned their initial position that they never changed employee time records, Defendants now argue that they only changed time that was incorrectly reported by delivery drivers. However, like Plaintiffs, Defendants fail to connect their argument to evidence of any particular change or to any particular employee.

Nor does Defendants' argument that Named Plaintiffs "admitted" to inaccurately reporting their time provide grounds for summary judgment. (ECF No. 99, PAGEID # 3833; ECF No. 79, 500–02.) This argument is based primarily on Mr. Edwards' testimony that he would clock in as soon as he arrived "to get it out of the way," (Edwards Dep., ECF No. 82-1, p. 53), but his testimony cuts both ways; Mr. Edwards also testified that he "would show up at the hub, clock in and immediately begin loading [his] truck," (Edwards Dep., ECF No. 82-1, p. 101–02), that it was "very rare" for him to forget to clock out at the end of his shift, (*Id.* at 15), and that he would inform management if he forgot to clock out before commuting home (*Id.* at 34, 68–69, 101). As for Mr. Harris, his testimony also has some inconsistencies, but he testified that he would clock in right before he started working and would clock out right after he finished, without exception. (Harris Dep., ECF No. 81-1, p. 68.) And Ms. McElwee's testimony shows that she may have reported her commutes as time spent working, (McElwee Dep., ECF No. 80-1, 62–64, 120–122), but she also

testified that she would inform her supervisor every time she forgot to clock out on time. (*Id*. at 181). There is no evidence that any of the 51 opt-ins inaccurately recorded time that was changed by Defendants.

Accordingly, Plaintiffs' motion for summary judgment is **DENIED**. However, Defendants move for summary judgment on additional grounds.

> **b.    Genuine issue of material fact also exists as to whether Defendants knew or had reason to know about any alleged unpaid work.**

Defendants also moved for summary judgment on the grounds that they did not know or have reason to know about Plaintiffs' alleged unpaid work.

Generally, employers are liable under the FLSA only if they knew or had reason to know that their employees performed work without compensation. *Craig*, 823 F.3d at 388–89. "When [an] employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White*, 699 F.3d at 876 (citations omitted). Employers who provide reasonable procedures for capturing unreported work are not liable for unpaid work when an employee fails to follow the established procedures. *Id.* But, even when reasonable procedures exist, an employer is liable for unpaid overtime if it "prevented employees from reporting overtime" or was "otherwise notified of the employees' unreported work." *Craig*, at 389 (citing *White*, at 876).

Because Plaintiffs' claims are based on Defendants' manual changes to employee-reported time, a jury could find that Defendants knew or had reason to

know that they were not compensating employees for all work performed.

Defendants dispute that their manual changes prove that they knew or had reason to know about unpaid work. Defendants claim that employee time records were changed to remove "fraudulently" reported time, explaining that they only changed time records at an employee's request or when GPS data showed that an employee inaccurately reported their time. (ECF No. 79, PAGEID # 499–500.) For instance, Cowdery claimed that Defendants changed an employee's clock in time if GPS data showed that the employee clocked in before arriving at the FedEx warehouse. (Cowdery Dep., ECF No. 83-1, pp. 168, 176–180.) However, Defendants' current explanation that any changes were justified by GPS data conflicts with their earlier claim that "they never altered clock in and clock-out times[.]" (Defendants' Responses to First Set of Interrogatories, ECF No. 85-10, PAGEID # 2790.) Thus, it is for a jury to decide whether Defendants' explanation is credible.

Defendants also argue that their ability to know about any unpaid time was thwarted by Plaintiffs' failure to use BCI's timekeeping procedures to fix issues with their time. According to Defendants, employees were required to submit time correction requests when they inaccurately reported their time. (ECF No. 79, PAGEID # 499–500.) But this argument ignores the nature of Plaintiffs' claims— which allege that inaccuracies in their time records were caused by Defendants' changes, not inaccurate reporting or failure to submit correction requests.

Defendants' motion for summary judgment is **DENIED** on Counts I and II.

17

## 2.    Unjust Enrichment Claims—Count III

Defendants seek summary judgment on Named Plaintiffs' unjust enrichment claims because Ohio law does not allow such claims where an adequate legal remedy exists. (ECF No. 79, PAGEID # 502–03.) In response, Named Plaintiffs argue that the FLSA does not provide a remedy for unpaid non-overtime wages allegedly retained by Defendants, so their claims for unjust enrichment should survive. (ECF No. 94, PAGEID # 3777.)

In Ohio, a claim for unjust enrichment is a quasi-contractual theory of recovery that allows for restitution where no contact exists, but one is "implied in law" because a party "retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 14 N.E.2d 923, 925–27 (Ohio 1938). Because it is an equitable doctrine, a plaintiff may not recover under a theory of unjust enrichment where an adequate legal remedy exists or where a contract governs his relationship with the defendant. *See Wolfer Enter., Inc. v. Overbrook Dev. Corp.*, 724 N.E.2d 1251, 1253 (Ohio Ct. App. 1992) (citations omitted); *see Ullmann v. May*, 72 N.E.2d 63, syl. ¶ 4 (Ohio 1947).

The FLSA does not provide a remedy for unpaid, non-overtime wages, but such a remedy does exist under contract law. *See Cowan v. Nationwide Mut. Ins. Co.*, No. 2:19-CV-1225, 2019 WL 4667497, at *10, n. 5 (S.D. Ohio Sept. 25, 2019). BCI's relationships with its employees are governed by employment agreements, so Named Plaintiffs cannot recover under their theory of unjust enrichment. (*See, e.g.*,

McElwee's Signed At-will Agreement, ECF Nos. 79-4; Edwards's Signed At-will Agreement, ECF No. 79-24.)

Accordingly, Defendants' motion for summary judgment is **GRANTED** on Count III.

### 3.    Retaliation Claims—Counts IV and V

Defendants move for summary judgment on Counts IV and V, in which Harris and McElwee allege that they were terminated in retaliation for complaining about unpaid overtime in violation of the FLSA.

FLSA retaliation claims are reviewed under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing that: (1) she engaged in a protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) thereafter, the employer took an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Id.* If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the defendant provides such a reason, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination." *Id.*

19

Defendants dispute whether Harris and McElwee identified similarly situated comparators and, as a result, argue that Harris and McElwee cannot establish the fourth element of the prima facie case or prove that Defendants' legitimate, nondiscriminatory reasons for terminating them were pretextual. (ECF No. 79, PAGEID # 504; ECF No. 99, PAGEID # 3828.)

### a. Harris and McElwee have established a causal connection.

Defendants argue that, without identifying similarly situated comparators, Harris and McElwee cannot establish a causal connection between their protected activities and their terminations. (ECF No. 79, PAGEID # 503.) That is not the law. A causal connection can be established by demonstrating a close temporal connection between the protected activity and the adverse action. *Harper v. City of Cleveland*, 781 F. App'x 389, 397 (6th Cir. 2019). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence." *Alexander v. Ohio State Univ. Coll. of Soc. Work*, 429 F. App'x 481, 490 (6th Cir. 2011) (finding that two to three months gap was sufficient, but nine-months was too attenuated to permit an inference of causation without more); *see also Barrow v. City of Cleveland*, 773 F. App'x 254, 264 (6th Cir. 2019) ("[A] gap of approximately four to five months is insufficient, without additional evidence, to imply causation.").

Here, McElwee complained about unpaid overtime in late June 2020 and was terminated on July 28, 2020. (McElwee Dep., ECF No. 80-1, pp. 183; *see also* McElwee Decl., ECF No. 85-14.) Harris complained about his compensation in late December 2020 and was terminated on March 6, 2021. (Harris Dep., ECF No. 81-1, pp. 84–87, 95.) The close temporal connections between Harris's and McElwee's protected activities and their terminations are enough to establish causal connections.

> **b.  Harris's and McElwee's disciplinary records are legitimate non-discriminatory reasons for their terminations.**

Because Harris and McElwee have established a prima facie case of retaliation, the burden shifts to Defendants to provide a legitimate nondiscriminatory reason for their terminations. Defendants represent that Harris and McElwee were terminated based on their disciplinary records. (ECF No. 79, PAGEID # 505.) During her short tenure at BCI, McElwee missed a mandatory meeting, frequently arrived late to work, and called off without following procedures—she was written up each time. (McElwee Write-Ups, ECF No. 79-8.) As for Harris, he was written up for calling off work without following procedures and for repeatedly failing to deliver his assigned packages without providing a reason why he could not complete his route. (Cowdery Dep., ECF No. 58-11, pp. 9–18; Harris Write-Ups, ECF No. 79-16.) These reasons are sufficient to shift the burden back to Plaintiffs to prove pretext.

21

### c. Harris and McElwee have failed to prove that Defendants' proffered reason for terminating them is pretextual.

For their retaliation claims to survive, Harris and McElwee must demonstrate that the Defendants' proffered reason for terminating them is mere pretext for retaliation. They attempt to meet their burden using evidence that other BCI employees had similar (or worse) disciplinary records but were not terminated:

| Name | Write-Up 1 | Write-Up 2 | Write-Up 3 | Write-Up 4 |
|------|-----------|-----------|-----------|-----------|
| Jerome Burton | 12/2/2019 | 12/8/2019 | 12/10/2019 | 12/15/2019 |
| Dairyen Morgan | 6/8/2019 | 6/12/2019 | 6/13/2019 | 6/19/2019 |
| Jaxson Newsome | 3/12/2019 | 3/13/2019 | 3/15/2019 | 3/22/2019 |

(ECF No. 94, PAGEID # 3780 (citing Comparator Write-Ups, ECF Nos. 94-1, 94-3, 94-4).) Burton, Morgan, and Newsome were written up for showing up late, calling off work, inaccurately reporting time, failing to deliver packages without justification, and failing to identify maintenance issues during vehicle inspections. (*Id.*)

For this evidence to be probative of pretext, Harris and McElwee must prove that (1) the identified comparators were "nonprotected," meaning, here, that they did not complain about unpaid overtime, and (2) that they were similarly situated to McElwee and Harris "in all relevant respects." *See, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992) (finding that relevant aspects of employment may include having the same supervisor, being subject to the same standards, and engaging the same conduct); *see also Berry v. City of Pontiac*, 269 F. Appx 545, 549–50 (6th Cir. 2008) (employees are not similarly situated if the decision to terminate

them was contingent on a recommendation from different direct supervisors, even if the ultimate decisionmaker was the same).

***Nonprotected.*** Plaintiffs do not provide evidence that the identified comparators are nonprotected. Instead, they point to Cowdery's testimony that he could not recall whether or not Burton, Morgan, or Newsom made any such complaints. (ECF No. 94, PAGEID # 3783 (citing Cowdery Dep., ECF No. 85-11, pp. 41, 49, 55, 63).) Cowdery's lack of recollection does not prove a fact where, as here, Harris and McElwee carry the burden of proof.

***Similarly-situated.*** Nor have Harris and McElwee demonstrated that they were similarly situated to their identified comparators. Harris and McElwee had different direct supervisors than the proposed comparators. But at BCI, it was the direct supervisors who recommended termination to Mr. Cowdery. So, although Cowdery was the ultimate decisionmaker for the termination of any BCI employee, he made such a decision only after receiving a recommendation from an employee's direct supervisor. (Cowdery Dep., ECF NO. 83-1, p. 164.) There is no evidence that Burton's, Morgan's, or Newsom's supervisors recommended to Cowdery that they be terminated or that Cowdery disregarded such a recommendation. Burton, Morgan, and Newsom are not similar to Harris and McElwee in all relevant respects.

Because Harris and McElwee have failed to demonstrate pretext, Defendants' motion for summary judgment is **GRANTED** on Counts IV and V.

## IV.    MOTION TO DECERTIFY THE FLSA COLLECTIVE CLASS

Defendants moved to "decertify" Plaintiffs' FLSA collective class that was "conditionally certified" by this Court. However, the Sixth Circuit recently replaced the "two-step certification process" applied by this Court with a new process for issuing notice and allowing FLSA claims to proceed as a collective action. *See Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023).

### A.    Pre-*Clark* Process: Two-step Certification of FLSA Collective Actions

Until recently, district courts within the Sixth Circuit have employed a "two-step certification" process in FLSA collective actions. *See Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (Marbley, J.). The first step occurred early in litigation and required that named plaintiffs make a "modest factual showing" that they are "similarly situated" to a proposed class of opt-in plaintiffs. *Id.* (quoting *Comer v. Walmart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). If the named plaintiffs met their burden, then their class was "conditionally certified" and they were permitted to send court-supervised notice to potential opt-ins. *Id.* The second step occurred after the close of discovery and warranted a closer examination of whether the named plaintiffs were in fact, similarly situated to the opt-ins. *Comer*, 454 F.3d at 547. If the plaintiffs were similarly situated at the second step, they could proceed to trial collectively.

### B.    Post-*Clark* Process: Initial and Conclusive "Similarly-Situated" Determinations

In *Clark*, the Sixth Circuit made clear that "the term 'certification' has no

place in FLSA actions." *Id.*, at 1009:

> Certification is a term borrowed from Civil Rule 23, which governs
> whether a case may proceed as a class action. And class actions under
> Rule 23 "are fundamentally different from collective actions under the
> FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, 133 S.Ct.
> 1523, 185 L.Ed.2d 636 (2013). Specifically, unlike a Rule 23 class
> action, an FLSA collective action is not representative—meaning that
> "all plaintiffs in an FLSA action must affirmatively choose to become
> parties by opting into the collective action." *Canaday v. Anthem
> Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021) (cleaned up). Thus—
> in contrast to members of a Rule 23 class—similarly situated
> employees who join an FLSA action become parties with "the same
> status in relation to the claims of the lawsuit as do the named
> plaintiffs." *Id.* at 402–03 (cleaned up). In sum, under Rule 23, the
> district court certifies the action itself as a class action; whereas in an
> FLSA action, under § 216(b), the district court simply adds parties to
> the suit.

*Id.* The Circuit Court added that:

> [C]ourts have mistakenly assumed that "conditional certification"
> actually changes the character of the case. For example, any number of
> courts have asserted that, after conditional certification, the case then
> "proceeds" as a "collective" or even a "representative" action. *See, e.g.,
> Brittmon v. Upreach, LLC*, 285 F.Supp.3d 1033, 1042 (S.D. Ohio 2018);
> *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018).
> Those assertions are mistaken: "other employees" become parties to an
> FLSA suit (as opposed to mere recipients of notice) only after they opt
> in and the district court determines—not conditionally, but
> conclusively—that each of them is in fact "similarly situated" to the
> original plaintiffs. 29 U.S.C. § 216(b); *Canaday*, 9 F.4th at 403.

*Id.* Although there is no "certification," the Sixth Circuit retained a two-step process

for issuing notice and allowing FLSA claims to proceed as a collective action.

At step one, the Court makes an initial determination on whether the named

plaintiffs are similarly situated to other, potential opt-in plaintiffs. *Id.* at 1009. This

determination is provisional; it permits the sending of court-supervised notice to potential opt-ins but it "has zero effect on the character of the underlying suit." *Id.* (citing *Genesis Healthcare*, 569 U.S. at 75, 133 S.Ct. 1523). At this stage, named plaintiffs must show a "strong likelihood" that they are similarly situated to the potential opt-ins. *Id.* at 1011. The strong-likelihood standard is borrowed from the test applied when implementing preliminary injunctions and "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*

Step two occurs after the close of discovery and requires that the Court make a conclusive determination on whether the named plaintiffs are "in fact similarly situated" to opt-in plaintiffs. *See id.* at 1009–10. It is only after the Court conclusively determines the named plaintiffs are similarly situated to any opt-ins, that the opt-ins become parties to the suit and are permitted to proceed to trial collectively. *Id.* at 1009 (citing 29 U.S.C. § 216(b) and *Canaday*, 9 F.4th at 403). To succeed at step two and proceed to trial or judgment as a collective, named plaintiffs must show that they are similarly situated to the opt-ins by a preponderance of the evidence. *See, e.g., id.* at 1010.

### C. The Named Plaintiffs are similarly situated to the 51 opt-ins, and they can proceed to trial collectively.

Even though "certification" is no longer the correct terminology, the Court still must determine that the Named Plaintiffs are in fact similarly situated to the 51 opt-in plaintiffs if they are to proceed to trial collectively.

26

Named plaintiffs are similarly situated to opt-ins "when they suffer from a single, FLSA–violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Plaintiff-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). But employees can be "similarly situated" under the FLSA even if proof of a violation of one plaintiff's rights does not necessarily prove a violation of other plaintiffs' rights.  *Id.* That is, plaintiffs are similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Thus, named plaintiffs are required to show that their position is "similar, not identical" to the position of the opt-ins. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (citations omitted). Similarly situated opt-ins "are those whose causes of action accrued in approximately the same manner as those of the named plaintiff." *Id.*

Factors that guide the Court's determination of similarly situatedness, include whether opt-ins "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the [named] plaintiffs were." *Clark*, at 1010 (citing *Pierce*, 922 F.3d at 745–46. Another factor is whether plaintiffs are subject to different, individualized defenses. *Pierce*, at 745 (citing *O'Brien*, at 584). *See also Monroe*, 860 F.3d at 404 ("Several circuits, including our own, hold that individualized defenses alone do not warrant decertification where

sufficient common issues or job traits otherwise permit collective litigation."). No single factor is determinative, instead:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Clark*, at 1012 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482 (1989).

If collective litigation would be efficient for liability but not damages, similarly situated plaintiffs should be permitted to proceed to trial collectively on liability, with damages addressed separately. *See, e.g., Monroe*, at 405 (citing *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1104–08 (10th Cir. 2001) (district court abused its discretion in "decertifying" the class because individualized defenses could be dealt with at the damages stage of trial)).

Here, Named Plaintiffs' and the opt-in's claims involve the same issues of law and fact about whether Defendants had a FLSA-violating policy of altering employee time records to avoid paying them overtime. All claims are premised on changes that Defendants made to time recorded in HomeBase. Because the opt-ins were subject to the same timekeeping practices and performed the same duties as Named Plaintiffs, proof that Defendants acted in conformity with the alleged FLSA violating policy tends to prove a violation for all plaintiffs.

Defendants argue that collective litigation is inefficient because each plaintiff is subject to individualized defenses. (ECF No. 79; PAGEID # 506.) But here,

Defendants raise the same defense against everyone—that all recorded time was changed to accurately reflect time actually worked. This defense does not render collective litigation inefficient. Just as Plaintiffs can prove their claims through evidence that Defendants acted in conformity with a FLSA violating policy, Defendants can collectively prove their defense through evidence that they only changed employees' recorded time when they had legitimate reason to believe that an employee reported time for work not performed.

Defendants next argue that all claims should be tried separately because each plaintiff's claim requires individualized proof. For collective litigation to be inefficient, however, the individualized elements of a plaintiff's claim must overshadow those that are common to all plaintiffs. That is not the case where, as here, all claims are unified by a common theory of liability.

Finally, Defendants argue that they are entitled to summary judgment against Named Plaintiffs. Without viable claims, Named Plaintiffs are not similarly situated with others in their collective action. However, as discussed above, genuine issues of material fact remain on Named Plaintiffs' FLSA claims against Defendants.

Although each claim requires certain individualized proof, the merits of the named and opt-in plaintiffs' claims are such that allowing them to proceed to trial collectively is the most efficient method of resolving all claims.

Accordingly, Defendants' decertification motion is **DENIED**.

## V.  CONCLUSION

For the reasons set forth above, the Court rules as follows on the pending motions:

- Plaintiffs' motion to strike is **GRANTED** as to the GPS evidence submitted for the first time in Defendants' reply brief and is **DENIED** as to Defendants' reply arguments regarding their use of GPS data. (ECF No. 100.)

- Defendants' motion to strike Plaintiffs' Summary Judgment Sample evidence is **DENIED** as moot. (ECF No. 102.)

- Summary judgment is **DENIED** to both parties on Counts I and II and is **GRANTED** in favor of Defendants on Count III, IV, and V. (ECF Nos. 79, 85.)

- Plaintiffs' class allegations on Count II are **STRUCK**.

- Defendants' motion to "decertify" Plaintiffs' collective action is **DENIED**. (ECF No. 79.)

The Court will set a trial date for Counts I and II in a forthcoming order.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**